14-420-cr; 14-424-cr
*United States v. Spaulding, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of November, two thousand fifteen.

Present:
> DEBRA ANN LIVINGSTON,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges*,
> ANALISA TORRES,
> *District Judge.**

_____

UNITED STATES OF AMERICA

> *Appellee*,

> v.                                                    14-420-cr; 14-424-cr

DENNIS SPAULDING, DAVID CARI

> *Defendants-Appellants*.

_____

For Appellee:             RICHARD J. SCHECHTER, Krishna R. Patel, and Sandra S. Glover, Assistant United States Attorneys, *for* Deirdre M. Daly, United States Attorney for the District of Connecticut, New Haven, C.T.

---

\* The Honorable Analisa Torres, of the United States District Court for the Southern District of New York, sitting by designation.

For Defendant-Appellant Spaulding:    FRANK J. RICCIO II, ESQ., Law Offices of Frank J. Riccio LLC, Bridgeport, C.T.

For Defendant-Appellant Cari:    CHARLES F. WILLSON, Nevins Law Group LLC, East Hartford, C.T., Alex V. Hernandez, Pullman & Comley, LLC, Bridgeport, C.T.

**UPON DUE CONSIDERATION WHEREOF it is hereby ORDERED, ADJUDGED, AND DECREED** that the convictions and the sentences imposed by the district court are **AFFIRMED**.

## I.    Background

Defendants-Appellants Dennis Spaulding and David Cari appeal from judgments of the United States District Court for the District of Connecticut (Thompson, *J.*), entered January 24, 2014, after a four-week jury trial, regarding Spaulding and Cari's conduct while they were serving as East Haven, Connecticut police officers.   The jury convicted Spaulding of one count of conspiracy to violate constitutional rights, in violation of 18 U.S.C. § 241; three counts of deprivation of civil rights, in violation of 18 U.S.C. § 242; and two counts of obstruction of justice by authoring a false police report, in violation of 18 U.S.C. § 1519.   The jury also convicted Cari of one count of conspiracy to violate civil rights, in violation of 18 U.S.C. § 241; one count of deprivation of civil rights, in violation of 18 U.S.C. § 242; and one count of obstruction of justice by authoring a false police report, in violation of 18 U.S.C. § 1519. Spaulding and Cari were sentenced principally to 60 months' imprisonment and 30 months' imprisonment, respectively.   In addressing Spaulding and Cari's various challenges to their convictions and sentences, we assume the parties' familiarity with the issues on appeal and the record of prior proceedings, which we reference only as necessary to explain our decision.

**II.     Sufficiency of the Evidence**

Spaulding and Cari argue that there was insufficient evidence to support any of their convictions.   We review challenges to the sufficiency of the evidence *de novo*.   *United States v. Desposito*, 704 F.3d 221, 226 (2d Cir. 2013).   However, a defendant challenging the sufficiency of the evidence bears a "heavy burden," *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011), as we "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor and 'deferring to the jury's assessment of witness credibility' and its assessment of the weight of the evidence," *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008) (citations and alterations omitted) (quoting *United States v. Balla*, 236 F.3d 87, 93 (2d Cir. 2000)).   If "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," we must affirm the conviction.   *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

When a defendant challenges the sufficiency of the evidence in a conspiracy case, deference to the jury "is especially important . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court."   *United States v. Morgan*, 385 F.3d 196, 204 (2d Cir. 2004) (omission in original) (quoting *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir. 1992)).   "The record must nonetheless permit a rational jury to find: (1) the existence of the conspiracy charged, (2) that the defendant had knowledge of the conspiracy, and (3) that the defendant intentionally joined the conspiracy."   *United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008) (citations omitted).

A. Spaulding's Convictions

Spaulding argues, first, that there was insufficient evidence to establish that he

3

participated in a conspiracy to violate the constitutional rights of East Haven residents, in violation of 18 U.S.C. § 241. We reject this argument. Drawing all inferences in favor of the government, the evidence establishes that starting in 2008, Spaulding and a fellow police officer, Jason Zullo, commenced a campaign in which they harassed Latino business owners and their customers in East Haven by targeting these businesses and intimidating patrons in a manner violative of Fourth Amendment rights. This evidence included the testimony of Moises Marin, the owner of an Ecuadorian restaurant in East Haven, who testified that Spaulding frequently came to his store with other officers to harass his Latino customers and that Spaulding was "always the one that was leading what [the other officers] did." Trial Tr. 491. José Luis Alvarracin, a local resident, likewise testified that Zullo and Spaulding together arrested him and several of his friends without cause, and that Zullo physically assaulted him after his arrest. In addition, Maria Chacon, the owner of another Ecuadorian business in East Haven, testified that Zullo, Cari, and several other officers were called in as "back-up" when Spaulding attempted to arrest Chacon's brother without cause, and video footage showed Zullo, Cari, and Spaulding attempting to recover surveillance video footage from Chacon's store after Father Manship was arrested without probable cause. The evidence also demonstrated that Spaulding, in furtherance of this conspiracy, violated the constitutional rights of Marin and José Luis Alvarracin by subjecting Marin to excessive force and by arresting both individuals without probable cause and then filing false police reports regarding the arrest incidents. This and other evidence were sufficient to permit a rational trier of fact to conclude beyond a reasonable doubt that Spaulding knowingly participated in a conspiracy to violate constitutional rights.

In connection with his November 21, 2008 arrest of Marin, Spaulding was convicted of (1) excessive use of force against Marin, in violation of 18 U.S.C. § 242; (2) false arrest of

Marin, in violation of 18 U.S.C. § 242; and (3) obstruction of justice by authoring a false police report regarding the arrest, in violation of 18 U.S.C. § 1519. Spaulding argues that there was insufficient evidence to support these three convictions. We reject these arguments as well. At trial, Marin testified that immediately after Marin took two photographs of Spaulding's car, Spaulding ran up behind Marin, pushed Marin to the ground, and kicked Marin multiple times, before finally arresting him. Hospital records admitted into evidence indicated that Marin was assaulted and suffered contusions, and photographs taken by Marin's sister corroborated Marin's testimony as to the nature of his injuries. After the incident, Spaulding filed a police report claiming, *inter alia*, that Marin flagged down Spaulding, started yelling at Spaulding, and resisted arrest. Marin and his brother, who witnessed the scene, testified that the statements contained in the police report were false. The jury was entitled to credit the testimony supporting the Government's case and to discredit the statements in Spaulding's report. *See United States v. Rea*, 958 F.2d 1206, 1221–22 (2d Cir. 1992) (noting that "the credibility of the witnesses . . . [is an issue] within the province of the jury"). We thus conclude that there was sufficient evidence to support Spaulding's three convictions in connection with his arrest of Marin.

In connection with his January 21, 2009 arrest of Alvarracin, Spaulding was convicted of (1) false arrest of Alvarracin, in violation of 18 U.S.C. § 242; and (2) obstruction of justice by authoring a false police report regarding the arrest, in violation of 18 U.S.C. § 1519. Spaulding contends that there was insufficient evidence to support these two convictions as well. But upon review of the record, we find that sufficient evidence supported Spaulding's convictions on both counts. Alvarracin testified that Spaulding arrested Alvarracin after he asked Spaulding why Spaulding was treating Alvarracin and his friends poorly. While Spaulding's police report

regarding the arrest claimed that Spaulding arrested Alvarracin only after Alvarracin repeatedly yelled obscenities at Spaulding and became belligerent towards Spaulding and fellow police officers at the scene, numerous witnesses contradicted Spaulding's report and supported Alvarracin's account of the events. In sum, we conclude that there was sufficient evidence to support all six of Spaulding's convictions.

## B. Cari's Convictions

We next consider the sufficiency of the evidence to support Cari's three convictions. Cari argues that there was insufficient evidence to support his two convictions in connection with his February 19, 2009 arrest of Father James Manship, an advocate for the rights of Latino residents in the East Haven area to be free from harassment by the East Haven police. The evidence, however, is more than sufficient to support Cari's convictions for the false arrest of Father Manship, in violation of 18 U.S.C. § 242, and obstruction of justice by authoring a false police report regarding the arrest of Father Manship, in violation of 18 U.S.C. § 1519. At trial, Father Manship testified that he was videotaping Cari and Spaulding's actions from a safe distance when Cari asked why Father Manship was videotaping, approached Father Manship, and arrested him, even though Father Manship was not disrupting police in the conduct of their business and offered no resistance. Cari's police report, meanwhile, suggested that Father Manship was carrying a possible weapon and that he belligerently resisted arrest. Multiple witnesses, corroborated by videotape evidence, testified that Father Manship neither spoke nor resisted as Cari arrested Father Manship. This evidence was more than sufficient for a rational jury to conclude that Cari arrested Father Manship without probable cause and then authored a false police report regarding the arrest.

Cari also argues that there was insufficient evidence to establish that he knowingly

participated in a conspiracy to violate the Fourth Amendment rights of East Haven residents, in violation of 18 U.S.C. § 241, because there was no evidence that Cari knew about or agreed to join the conspiracy. Although the evidence of Cari's involvement in the conspiracy was less extensive than the evidence of Spaulding or Zullo's involvement, we reject Cari's contention that there was insufficient evidence to establish his knowing participation in the conspiracy. Based on the evidence at trial, the jury had an ample basis on which to conclude that shortly after Cari arrested Father Manship without probable cause in Spaulding's presence, Cari met with Spaulding to exchange information. Cari and Spaulding then separately filed police reports of the events surrounding Father Manship's arrest, which, based on the Government's proof, were false in material respects. The evidence showed that Cari, in particular, drafted multiple versions of his report over the course of 11 days. Cari's final report claimed, *inter alia*, that he observed Father Manship with "an unknown shiny silver object" that was a "possible weapon," even though the videotape evidence clearly depicts Cari referring to the supposedly unknown object as a camera. G.A. 69. Recognizing that it is "unlikely that the prosecution will be able to prove the formation of [a conspiratorial] agreement by direct evidence," we conclude that the evidence here was sufficient to permit a rational jury to determine beyond a reasonable doubt that Cari knowingly joined with Spaulding in the conspiracy to violate Fourth Amendment rights. *United States v. Anderson*, 747 F.3d 51, 73 (2d Cir. 2014) (quoting *United States v. Nusraty*, 867 F.2d 759, 762 (2d Cir. 1999)).

**III.    Evidentiary Ruling**

Spaulding and Cari together argue that the district court abused its discretion in excluding an audio recording of conversations in 2009 between Father Manship and a law student in a Yale Law School clinic. We review a district court's evidentiary rulings for abuse of discretion.

*United States v. Miller*, 626 F.3d 682, 687–88 (2d Cir. 2010). Under that standard, a district court's evidentiary decision will stand unless "manifestly erroneous." *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 100 (2d Cir. 1995). "[W]e will not grant a new trial unless we find that the introduction of inadmissible evidence was a clear abuse of discretion and was so clearly prejudicial to the outcome of the trial that we are convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Phillips v. Bowen*, 278 F.3d 103, 111 (2d Cir. 2002) (alteration in original) (quoting *Luciano v. Olsten Corp.*, 110 F.3d 210, 217 (2d Cir. 1997)).

Spaulding and Cari sought to introduce the audio recording as prior inconsistent statements. The district court ruled that the recording fell within the attorney-client privilege, and that, in any event, Spaulding and Cari had not satisfied the foundational requirements set out in Fed. R. Evid. 613(b) for admitting extrinsic evidence of such statements. We need not reach these questions, however, because even assuming that the district court erred, the exclusion of the recording of Father Manship's conversation with the Yale law student was harmless error. *See United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 95–96 (2d Cir. 2014) ("With respect to erroneous evidentiary rulings improperly admitting or excluding evidence, we ordinarily will reverse only where the improper admission or exclusion 'affect[ed] substantial rights' and therefore was not harmless." (quoting *Miller*, 626 F.3d at 688). The "inconsistencies" between Father Manship's testimony and the portion of the recording that defendants attempted to introduce—*i.e.*, whether Father Manship owned more than one camera and whether he thought East Haven police officers were "dumb"—were not relevant to the central issues of this case. Moreover, to the extent those earlier statements might have reflected on Father Manship's credibility, they had minimal value, since they related to tangential issues

rather than to the core of his testimony—the account of his arrest. That account was corroborated by the testimony of Chacon and Cruz and by Father Manship's video of the encounter immediately prior to his arrest. Finally, even absent Father Manship's testimony, there was more than sufficient evidence for the jury to conclude that Cari and Spaulding participated in the charged conspiracy, that Father Manship had been unlawfully arrested, and that Cari had fabricated a false report describing the arrest. This evidence included the testimony of Chacon and Cruz, Father Manship's video, evidence of Cari and Spaulding's attempt to recover the surveillance video from the scene of the arrest, and Cari's arrest report. Accordingly, we find no reason to reverse on the basis of the district court's evidentiary ruling.

**IV.    Closing Arguments**

Cari argues that several statements made by the Government during its closing arguments were so egregious as to warrant reversal of his convictions. Generally, inappropriate summation comments by the Government do "not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11 (1985). To warrant reversal of a conviction, prosecutorial misconduct must "cause[] the defendant substantial prejudice so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) (quoting *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999)). And where, as here, the defendant "did not object to the remarks at trial, reversal is warranted only where the remarks amounted to a 'flagrant abuse.'" *United States v. Germosen*, 139 F.3d 120, 128 (2d Cir. 1998) (quoting *United States v. Araujo*, 79 F.3d 7, 9 (2d Cir. 1996)).

The Government's statements during closing argument do not amount to flagrant abuse. Contrary to Cari's assertions, the Government's statement to the jury that "it's now all of you

that will decide which side possesses the truth" did not, when viewed in the context of the Government's entire closing argument, improperly shift the burden of proof to the defendants to prove their innocence. Likewise, the Government's references to Father Manship's video as "the truth," Trial Tr. 3136, and Cari's police report as "anything but the truth," Trial Tr. 3137, when viewed in context, were merely "rhetorical flourish[es]" that did not amount to improper vouching. *See United States v. Williams*, 690 F.3d 70, 76 (2d Cir. 2012). Nor did the Government, by employing the term "you" and "your" several times when explaining the rights guaranteed under the Fourth Amendment, encourage the jurors to imagine themselves as victims of Fourth Amendment violations. It is apparent that, when viewed in context, these statements referred to people generally, rather than the jury specifically. Because we find no statements by the Government amounting to flagrant abuse, we conclude that the Government made no improper remarks in summation that would warrant reversal.

## V. Jury Instructions

Cari next contends that the district court's jury instructions erroneously suggested that, where an individual is engaged in an activity protected by the First Amendment, a police officer must satisfy a heightened probable cause standard to arrest the individual. He further argues that the instructions' references to the First Amendment constructively amended the indictment, which charged him with conspiring to violate and violating Fourth Amendment rights. "A defendant challenging jury instructions must show that he was prejudiced by a charge that misstated the law." *United States v. Ferguson*, 676 F.3d 260, 275 (2d Cir. 2011). We generally review the propriety of jury instructions *de novo*. *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004). Here, however, the government argues that plain error review should apply, because Cari failed properly to preserve his present challenge to the instructions.

We need not decide the issue because, pursuant to either standard, we find no error in the instructions of which Cari complains.

From the district court's lengthy jury instructions, Cari identifies two sentences drawn from the district court's explanation of Fourth Amendment principles. The sentences are not misstatements of the law. They either quote verbatim or paraphrase Supreme Court precedent, and they cannot, especially when examined in context, be fairly construed as setting forth the "heightened probable cause" standard that Cari asserts. Nor can it be said that these two passing references constructively amended the indictment, particularly given that the jury was instructed that the right at issue for both the conspiracy and substantive counts was the "right to be free from unreasonable searches and seizures," Trial. Tr. 3283, 3296, and that "the indictment does not charge either defendant with violating any person's First Amendment rights," Trial Tr. 3317.

**VI.     Sentencing**

Finally, Spaulding argues that his sentence of 60 months' imprisonment, which was within the Sentencing Guidelines range set out in Spaulding's Presentence Report, was procedurally and substantively unreasonable. We review both the procedural and substantive reasonableness of a sentence under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). A sentence is "procedurally unreasonable if [the district court] 'fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence.'" *United States v. Aldeen*, 792 F.3d 247, 251 (2d Cir. 2015) (emphasis omitted) (quoting *United States v. Chu,* 714 F.3d 742, 746 (2d Cir. 2013)). A sentence is substantively unreasonable "only in exceptional cases where the

11

trial court's decision 'cannot be located within the range of permissible decisions.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)).

Spaulding claims that the sentence was procedurally unreasonable because the district court abused its discretion in applying a three-level enhancement pursuant to U.S.S.G. § 2J1.2(b)(2) for conduct that resulted in "substantial interference with the administration of justice." Here, Spaulding's false arrests and his false police reports of those arrests caused unnecessary expenditure of governmental resources and interfered with the state criminal justice system by requiring those courts to make "judicial determination[s] based upon . . . false evidence." U.S.S.G. § 2J1.2(b)(2) cmt. n.1. The district court therefore did not abuse its discretion in applying the three-level enhancement.

Spaulding next contends that the sentence was substantively unreasonable because the district court failed to account properly for multiple personal characteristics, as well as factors set out in 18 U.S.C. § 3553(a), that Spaulding believes warranted a below-Guidelines sentence. We reject this argument. An examination of the district court's comments at the sentencing hearing reveals that the district court thoroughly weighed the information presented before the court, and the within-Guidelines sentence imposed fell "comfortably within the broad range of sentences that would be reasonable." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

We have considered Defendants-Appellants' remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

12